**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Antonio M. Bogan, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 15cv7631 |
| | ) | |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| | ) | |
| Wexford Health Sources, | ) | |
| Grievance Officer Jill Parrish, | ) | |
| Correctional Officer Jose Suero, | ) | |
| Correctional Officer Christopher Markee, | ) | |
| Sergeant Jon Wiles, Claude Owikoti, | ) | |
| Debbie Knauer, Charles Best, | ) | |
| Brenna George, Major Prentiss, and | ) | |
| Correctional Officer Edwards, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

**INTRODUCTION**

1.      This action arises under the Constitution and laws of the United States for damages and injunctive relief to redress the deprivation of Plaintiff Antonio M. Bogan's ("Plaintiff") rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

2.      This action is against Wexford Health Sources ("Wexford"), the exclusive provider of medical and dental care to inmates in the custody of the Illinois Department of Corrections ("IDOC") at the Stateville Correctional Center ("the SCC") and at the Pontiac Correctional Center ("the PCC"), employees of Wexford, and various correctional officers, grievance officers, and administrators employed at the SCC and PCC (collectively,

"Defendants"), who independently and collectively acted with deliberate indifference by recklessly, maliciously, willfully, and wantonly denying Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment rights to due process of law and equal protection of the laws.

**JURISDICTION**

3.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 and the Eighth and Fourteenth Amendments to the Constitution of the United States.

4.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1367.

5.     This Court has personal jurisdiction over Defendants because each Defendant is a resident of Illinois, owns and/or operates a business within Illinois, and/or is employed at a facility located in Illinois.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**PARTIES**

7.     Plaintiff is a citizen of the United States who was an inmate at the Northern Reception and Classification Center ("NRC"), a component of the SCC,  from approximately March 24, 2015 through approximately January 26, 2016.  Plaintiff is currently an inmate at the PCC, which is located in Pontiac, IL.  Prior to his incarceration, Plaintiff resided in Joliet, IL.

8.     On information and belief, Defendant Wexford is the exclusive provider of medical and dental care to inmates in the custody of the Illinois Department of Corrections at the SCC and the PCC.

9.      On information and belief, each of Defendant Grievance Officer Jill Parrish, Defendant Correctional Officer Jose R. Suero, Defendant Acting-Sergeant Christopher Markee,

and Defendant Sergeant Jon Wiles is or was an employee of IDOC at the NRC during Plaintiff's incarceration at the NRC.

10.     On information and belief, Defendant Claude Owikoti is a Physician Assistant practicing at the healthcare unit of the NRC ("the Healthcare Unit"), and his job consists of duties including, not limited to, providing adequate and reasonable health care to inmates at the NRC.

11.     On information and belief, Defendant Debbie Knauer is or was an employee of IDOC and an Administrative Review Board member at the SCC.

12.     On information and belief, each of Defendant Charles Best and Defendant Brenna George is or was an employee of IDOC and a member of the IDOC Adjustment Committee at the SCC.

13.     On information and belief, each of Defendant Major Prentiss and Defendant Correctional Officer Edwards is or was an employee of IDOC at the PCC.

14.     Each of Defendants Parrish, Suero, Markee, Wiles, Owikoti, Knauer, Best, George, Prentiss, and Edwards is being sued in his or her individual capacity.

15.     Each Defendant had a duty and obligation to provide medical and/or dental care to Plaintiff or to ensure that Plaintiff was seen by a provider of medical care, but deliberately failed to carry out their duties and obligations.

16.     In all their actions, Defendants were acting under color of state law and pursuant to their individual authority.

17.     The Defendants, separately and collectively, engaged in acts and omissions that constituted deliberate indifference to Plaintiff's serious medical conditions, thereby depriving Plaintiff of the rights and privileges secured to him by the United States Constitution.  These acts

- 3 -

were carried out under the color of state law and had no justification or excuse in law. They were instead gratuitous, illegal, improper, deliberate, reckless, malicious, willful, and wanton, equaling deliberate indifference, cruel and unusual punishment, deprivation of liberty without due process of law, and deprivation of property without due process of law.

## ACTS GIVING RISE TO THIS ACTION

18.     On or about March 24, 2015, Plaintiff was processed into the NRC to begin serving a 30-year sentence, thus putting Plaintiff in the exclusive custody of IDOC, which is required by law to provide its inmates with medical and dental care.

19.     Upon being processed into the NRC, an x-ray taken during a dental exam showed that filling had fallen out of one of Plaintiff's teeth, exposing a hole. Plaintiff told the examining dentist that he experienced significant pain in the tooth and that he would like the tooth either refilled or extracted. The dentist responded that he would schedule Plaintiff for a procedure immediately. Yet Plaintiff was never thereafter seen by the dentist or any other dentist while incarcerated at the NRC. Consequently, the toothache continued to cause Plaintiff significant pain, preventing Plaintiff from eating certain items on his state-issued food trays.

20.     Approximately one and a half weeks after being processed into the NRC, Plaintiff started to have pain in his stomach and groin, and in his penis when urinating. When Plaintiff moved his bowels, Plaintiff felt pain in his stomach and observed a significant amount of blood in his stool.

21.     After experiencing these symptoms, Plaintiff requested medical assistance from correctional staff and Healthcare Unit staff. Staff members told Plaintiff to state his problems on a "medical" request slip and to send the slip to the Healthcare Unit.

22.     At the time Plaintiff began experiencing the symptoms, however, Plaintiff discovered that the "medical" request slips were not available.  As a result, both correctional staff and Healthcare Unit staff directed Plaintiff to state his problems on a "regular" request slip.

23.     Plaintiff sent a "regular" request slip to the Healthcare Unit, stating that he had a severe toothache as a result of the missing filling, that he had pain when urinating, that he had pain in his stomach when moving his bowels, and that he observed blood in his stool.  After a week had passed without receiving a response from the Healthcare Unit, Plaintiff sent another "regular" request slip to the Healthcare Unit in which he reiterated his medical and dental issues.

24.     Twice a week for three weeks, Plaintiff sent "regular" request slips to Healthcare Unit.  In addition to sending multiple request slips, Plaintiff also communicated his problems and need for medical and dental attention to correctional staff members.  Yet by the last week of April 2015, not only had Plaintiff not been seen by a medical or dental staff, he had had not received any communication from the Healthcare Unit regarding the submitted requests.

25.     Around the beginning of July 2015, the NRC staff made available the "medical" requests slips.  Plaintiff then began sending to the Healthcare Unit "medical" request slips in which he again stated his medical and dental issues and requested to see a doctor and dentist. Plaintiff's request continued to be ignored, prompting Plaintiff to file a grievance on or about July 12, 2015.  A copy of this grievance is attached as Exhibit 1.

26.     In answering Plaintiff's grievance, Correctional Counselor Ruth Miller went to the Healthcare Unit on or about July 30, 2015, and personally requested that a doctor and dentist see Plaintiff.  On or about August 3, 2015, Plaintiff informed Correctional Counselor Miller that he had not been seen by Healthcare Unit staff, at which point Correctional Counselor Miller went

back to the Healthcare Unit and again personally requested that a doctor and a dentist see Plaintiff.

27.     On or about August 3, 2015, Plaintiff resubmitted his grievance.  On or about August 6, 2015, Plaintiff went to Correctional Counselor Miller's office, who was in possession of Plaintiff's grievance.  Correctional Counselor Miller told Plaintiff she would forward the grievance to Defendant Parrish.

28.     On August 17, 2015, after not hearing from the grievance officer, Plaintiff sent a copy of his grievance to the Administrative Review Board ("ARB").

29.     On September 13, 2015, after not receiving a response from either the Defendant Parrish or the ARB, Plaintiff submitted another copy of his grievance by placing it in his door for the gallery officer to pick up and place in the mail bag or folder reserved for the Correctional Counselor.  Once the grievance left Plaintiff's possession, Plaintiff could only assume that the it is properly routed; Plaintiff has no way of actually knowing if his grievance was correctly forwarded. Plaintiff also sent multiple request slips to Correctional Counselor Miller and Defendant Parrish inquiring about the submitted grievances

30.     On September 14, 2015, Plaintiff copied his original grievance and submitted it as an "emergency" grievance.  On September 23, 2015, Plaintiff's grievance was returned to him, signed by the Chief Administrative Officer, with the box checked, "No; an emergency is not substantiated.  Offender should submit his grievance in the normal manner."

31.     Around 11:00 am on  October 5, 2015, Plaintiff woke up to severe stomach pains as well as nausea.  Plaintiff moved his bowels, which as usual contained a significant amount of blood.  Minutes later, Plaintiff vomited, and his vomit also contained blood.  Plaintiff informed

Correctional Officer Tucker, the galley officer assigned to U-gallery for the 7:00 am to 3:00 pm shift, of his problems.

32.     Plaintiff informed Correctional Officer Tucker of his many attempts to get medical attention over the preceding six months, all of which were ignored. Correctional Officer Tucker immediately called a nurse for Plaintiff, and informed Plaintiff that the nurse said she was coming to U-gallery to see Plaintiff.

33.     After three hours had passed without seeing the nurse, Plaintiff—still in significant pain—began yelling out his cell for Correctional Officer Tucker. But Correctional Officer Tucker was on break, having been relieved by Defendant Suero.

34.     Plaintiff explained his condition Defendant Suero and again requested medical attention. Defendant Suero responded by telling Plaintiff that he was not the gallery officer, and that he could not help him.

35.     Plaintiff then pressed the "emergency" call button located in his cell to request medical attention. The call was answered by Correctional Officer Jane Doe, who asked: "What's your medical emergency?" Plaintiff explained his situation to Correctional Officer Jane Doe as well as his many attempts to acquire medical attention. Correctional Officer Jane Doe replied to Plaintiff, "that's not a medical emergency, so stop pressing the button and talk to your gallery officer." Plaintiff tried explaining to Correctional Officer Jane Doe that the gallery officer at the time—Defendant Suero—refused to help him, and that he needed to see a medical staff as soon as possible. At this point, Correctional Officer Jane Doe became irate with Plaintiff, aggressively and sarcastically responding: "Well good luck with getting out your cell to Health Care. Goodbye," at which point she disconnected her call with Plaintiff.

36.     In an act of desperation, Plaintiff opened his chuckhole and began pouring water into the gallery, yelling to Defendant Suero that he needed medical attention and wanted to talk to a sergeant or a lieutenant.  Defendant Suero yelled to Plaintiff" "Fuck you!  You ain't speaking to no one!"

37.     Defendant Suero then left U-gallery and returned with Defendant Markee.  Even though Plaintiff explained his situation to Defendants Suero and Markee, they refused to help, prompting Plaintiff to continue to pour water into the gallery as an act of desperation to get medical attention or to get a sergeant or lieutenant to speak to him.

38.     At this point, Defendants Suero and Markee left the U-gallery and returned with Defendant Wiles.  Defendants Suero and Markee falsely stated to Defendant Wiles that Plaintiff assaulted them with an unknown liquid.  Once Defendant Wiles arrived at Plaintiff's cell, Plaintiff tried explaining that he was in pain and had serious medical problems, but Defendant Wiles would not listen; rather than ensuring Plaintiff received medical attention, Defendant Wiles threatened to spray Plaintiff with mace if he didn't "cuff up."  After placing Plaintiff in handcuffs, Defendants Suero, Markee, and Wiles then escorted Plaintiff to "B-gallery" for disciplinary segregation.

39.     When Plaintiff arrived at B-gallery, he explained his situation to Lieutenant Bethea, who ordered a correctional officer to take Plaintiff to the Healthcare Unit.

40.     Upon arriving to Health Care, Plaintiff only spoke to a nurse.  Despite Plaintiff's detailed explanation of his symptoms, along with his other medical problems, none of the available doctors examined or spoke with Plaintiff.  Plaintiff, instead, was scheduled to see a doctor on October 6, 2015.

- 8 -

41.     Meanwhile, after transferring Plaintiff to B-gallery, Defendant Wiles instructed Defendants Suero and Markee to retrieve Plaintiff's personal property from of his U-gallery cell and to deliver it to his B-gallery cell.  Neither Defendant Suero nor Defendant Markee prepared the required inventory sheet identifying the personal property removed from Plaintiff's U-gallery cell.  Defendants Suero and Markee delivered Plaintiff's property to Correctional Officer John Doe, who then delivered it Plaintiff's B-gallery cell.  Upon inspection of his personal property, Plaintiff discovered that a number of items were missing.  His requests, both verbally and through grievance procedures, to have the missing items returned have been denied.

42.     On October 6, 2015, Defendant Owikoti performed a basic examination of Plaintiff, including having his weight, blood pressure, and temperature checked, as well as a rectal examination.  Defendant Owikoti also ordered lab work to test Plaintiff's blood and urine. Despite Plaintiff's detailed description of his medical issues and symptoms, Defendant Owikoti did not perform any additional examination or order any additional testing.  Rather, he prescribed for the Plaintiff hemorrhoid cream and Fiberlax caps.

43.     Also on or about October 6, Plaintiff filed a grievance for the continued denial of medical and dental care, the deliberate indifference to his serious medical issues, and his treatment by Defendants Suero, Markee, and Wiles.  A copy of this grievance is attached as Exhibit 2.

44.     On or about October 7, 2015, an Adjustment Committee comprising Defendants Best and Charles held a hearing based on a disciplinary report submitted by Defendant Suero. In the disciplinary report, Defendant Suero submitted a false account of the events that transpired on October 5, 2015.  Further, Defendants Best and Charles did not allow Plaintiff to present or view any evidence that would contradict Defendant Suero's account, nor did Defendants Best

and Charles seek or obtain corroborating evidence from Defendants Markee or Wiles. Thus, based solely on Defendant Suero's falsified account, Defendants Best and Charles found Plaintiff guilty of assaulting a staff member and damage or misuse of property and sentenced him to, among other punishments, one year of segregated confinement. A copy of the Adjustment Committee's report is attached as Exhibit 3.

45. On or about October 8, 2015, while still experiencing the symptoms described above, Plaintiff was taken to the Healthcare Unit lab, where staff collected blood and urine samples. Yet neither Defendant Owikoti nor any other employee of Defendant Wexford reexamined Plaintiff after October 5, 2015.

46. On or about October 9, 2015, Plaintiff received a reply from Defendant Knauer, stating that he had not filed the appropriate grievance officer's response, which he never received. A copy of the reply is attached as Exhibit 4. On or about October 12, 2015, Plaintiff mailed his grievance to Defendant Parrish by placing it in an envelope marked "legal mail."

47. On or about December 17, 2015, Plaintiff received a Grievance Office's Report signed by Defendant Parrish responsive to Plaintiff's grievance dated October 6, 2015. A copy of the Grievance Officer's Report is attached as Exhibit 5. Yet, Defendant Parrish addressed only one aspect of Plaintiff's grievance – denial of medical care – and stated that no additional action was necessary based on the clearly deficient examination performed by Defendant Owikoti. Plaintiff has submitted at least six additional grievances regarding the continued denial of medical attention to address his medical needs, yet Defendant Parrish has not responded to these grievances or any grievance filed before October 6, 2015. Further, Defendant Parrish did not respond to the aspects of the October 6, 2015 grievance challenging Plaintiff's placement in disciplinary segregation.

48.     On or about January 26, 2016, IDOC transferred Plaintiff to the PCC, where Plaintiff remains in disciplinary segregation.  Plaintiff continued to experience the previously described medical issues and was limited in the food he could eat due to the toothache.

49.     On or about February 11, 2016—more than ten months since Plaintiff first grieved that he suffered acute dental pain as result of the toothache resulting from the missing filling—Plaintiff had that tooth extracted.

50.     On or about April 17, 2016, Plaintiff again began experiencing acute pain in his stomach.  Defendant Prentiss and Correctional Officer George entered Plaintiff's cell to perform a compliance check before taking Plaintiff to the barbershop, at which point Plaintiff told Defendant Prentiss that he was experiencing severe pain consistent with his previously-reported symptoms, that he was in need of medical care, and that he had routinely been denied medical care.

51.     Defendant Prentiss ignored Plaintiff and directed Correctional Officer George to place Plaintiff in handcuffs and take him to out of his cell.  In an act of desperation to receive medical attention, Plaintiff refused to be handcuffed.  In response, Defendant Prentiss directed Correctional Officer George to physically remove Plaintiff from his cell.  Major Prentiss then personally squeezed handcuffs so tightly around Plaintiff's wrists that the handcuffs severely restricted blood circulation to Plaintiff's hands.

52.     Plaintiff—with his blood circulation to his hands severely restricted—was then placed in a holding cell in the East Cell house for several hours.  Additionally, Plaintiff was not provided with lunch during his detention in the holding cell, despite his repeated requests.  On one occasion, Defendant Prentiss laughed at Plaintiff's request for food, stating "lunch is over."

53.     Defendant Edwards also denied Plaintiff's requests for medical attention and his lunch tray.  At one point, Defendant Edwards also responded to Plaintiff's request by stating: "Lunch is over.  You're shit out of luck."  Because Defendant Edwards continued to deny lunch to Plaintiff, Plaintiff informed Defendant Edwards that he was going to write a grievance for being denied his meal.  Defendant Edwards then threatened Plaintiff, telling him "if you do [submit a grievance], you better remember I'm the one who has to pass out your future trays."

54.     Thus, Plaintiff was denied medical attention to address a recurrence of the severe, undiagnosed, and untreated symptoms he has experienced since March 24, 2015, as well as unjustly being denied a meal.  Further, because Defendant Edwards threatened him, Plaintiff went on a hunger strike out of fear Defendant Edwards and/or other PCC staff would tamper with his food.

55.     On or about May 19, 2016, Defendant Knauer, writing for the ARB, summarily denied Plaintiff's appeal of Defendant Parrish's response.  A copy of the ARB's decision is attached as Exhibit 6.  Additionally, Defendant Knauer has repeatedly denied Plaintiff's direct appeals to additional grievances because Plaintiff did not submit a grievance officer response and/or did not file the appeal within the requisite timeframe, despite the fact that Plaintiff has routinely stated in such grievances that Defendant Parrish has not responded to his grievances at all, let alone in time for him to submit his appeal within the required timeframe.

## COUNT 1
### (Deprivation Of Medical Care/Cruel and Unusual Punishment)

56.     Plaintiff repeats and realleges paragraphs 1-55 above as if set forth herein.

57.     Count 1 is alleged against Defendants Wexford, Parrish, Owikoti, Prentiss, Edwards, and Knauer.

58.     Each and every one of Defendants Wexford, Parrish, Owikoti, and Knauer, as employees of the State of Illinois and/or acting under color of the laws of the State of Illinois, had a duty and obligation to provide or assist Plaintiff in receiving prompt, effective medical care.  But each and every one of Defendants Wexford, Parrish, Owikoti, and Knauer acted with deliberate indifference by failing to carry out their respective duty and obligation, making them jointly and severally liable for violating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

59.     Specifically, Defendant Wexford's policy and/or custom of reviewing, an in this case ignoring, inmates' requests for medical attention (either via "medical" or "regular" request slips) resulted in the deprivation of Plaintiff's right to medical attention, or otherwise caused significant delay in Plaintiff's attempts to gain medical attention.  Further, Defendant Wexford's policies and/or customs for such review, in light of Plaintiff's repeated requests over a number of months, resulted in the egregious lack of medical attention over an extended period of time, wherein Plaintiff's condition included serious medical issues, including severe abdomen pain, blood in Plaintiff's stool and vomit, painful urination, and aggravated toothache.

60.     Specifically, Defendant Parrish, knew of Plaintiff's deprivation of medical attention through Plaintiff's multitude of grievances wherein Plaintiff indicated his condition, including painful urination, abdominal pain, and blood in his stool, his repeated attempts seeking medical attention (via "medical" and "regular" request slips and numerous grievances).  Despite having such knowledge, Defendant Parrish either ignored, or otherwise approved of, the failure to provide medical treatment to Plaintiff.

61.     Specifically, Defendant Knauer, knew of Plaintiff's deprivation of medical attention through Plaintiff's multitude of grievances sent directly to the ARB wherein Plaintiff

indicated his condition, including painful urination, abdominal pain, and blood in his stool, his repeated attempts seeking medical attention (via "medical" and "regular" request slips and numerous grievances). Despite having such knowledge, Defendant Knauer either ignored, or otherwise approved of, the failure to provide medical treatment to Plaintiff.

62.     Specifically, Defendant Owikoti knew or should have known the Plaintiff's medical symptoms, including painful urination, abdominal pain, blood in his stool, blood in his urine, and blood in vomit, required a thorough medical examination and testing. Yet Defendant Owikoto either ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to Plaintiff's symptoms, as evidence by the inadequate medical examination in view of the totality of Plaintiff's symptoms as of October 6, 2015. Further, Defendant Owikoti continued to ignore or be deliberately, wantonly, recklessly, and/or willfully indifferent to Plaintiff's symptom by failing to reassess the effectiveness of the prescribed treatment.

63.     Specifically, Defendants Prentiss and Edwards knew or should have known the Plaintiff's medical symptoms required medical attention. Yet Defendants Prentiss and Edwards either ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to Plaintiff's requests for medical attention.

<u>**COUNT 2**</u>
<u>**(Cruel and Unusual Punishment)**</u>

64.     Plaintiff repeats and realleges paragraphs 1-55 above as if set forth herein.

65.     Count 2 is alleged against Defendants Suero, Markee, Wiles, Best, George and Knauer.

66.     Each and every one of Defendants Suero, Markee, Wiles, Best, George, Knauer, Prentiss, and Edwards, as employees of the State of Illinois acting under color of the laws of the State of Illinois, had a duty and obligation to ensure that Plaintiff while incarcerated at the SCC

and the PCC was not subject to discipline that amounts to cruel and unusual punishment. But each and every one of Defendants Suero, Markee, Wiles, Best, George, Knauer, Prentiss, and Edwards acted with deliberate indifference by failing to carry out their respective duty and obligation, making them jointly and severally liable for violating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

67.     Specifically, Defendant Suero knew or should have known that his incendiary remark to Plaintiff's pleas for medical assistance would have caused Plaintiff to react in desperation in order to receive such medical assistance. Further, Defendant Suero knew or should have known that the water Plaintiff deposited on the gallery floor posed no threat to either himself or Defendant Markee, and that fabrications as to the identity of the liquid or any alleged assault would result in Plaintiff being unjustly placed in disciplinary segregation. Additionally, Defendant Suero knew or should have known that fabricating the circumstances of the alleged assault occurring on or about October 5, 2015, and the omission of key facts from his statement would result in Plaintiff being unjustly placed in disciplinary segregation, among other unjust and unwarranted punishments. Yet Defendant Suero acted in a manner that ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to his duties and obligations to Plaintiff.

68.     Specifically, Defendant Markee knew or should have known that the water Plaintiff deposited on the gallery floor posed no threat to either himself or Defendant Suero, and that fabrications as to the identity of the liquid or any alleged assault would result in Plaintiff being unjustly placed in disciplinary segregation. Additionally, Defendant Markee knew or should have known that omitting a statement that would corroborate or dispute Defendant Suero's account of the disciplinary report would result in Plaintiff being unjustly placed in

- 15 -

disciplinary segregation, among other unjust and unwarranted punishments. Yet Defendant Markee acted in a manner that ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to his duties and obligations to Plaintiff.

69.    Specifically, Defendant Wiles knew or should have known that the water Plaintiff deposited on the gallery floor posed no threat to either Defendant Markee or Defendant Suero, and that fabrications as to the identity of the liquid or any alleged assault would result in Plaintiff being unjustly placed in disciplinary segregation.  Additionally, Defendant Wiles knew or should have known that omitting a statement that would corroborate or dispute Defendant Suero's account of the disciplinary report would result in Plaintiff being unjustly placed in disciplinary segregation, among other unjust and unwarranted punishments. Yet Defendant Wiles acted in a manner that ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to his duties and obligations to Plaintiff.

70.    Specifically, Defendants Best and George, after reviewing the disciplinary report and hearing Plaintiff's account of the altercation, specifically with respect to Plaintiff's pleas for medical assistance, knew or should have known that placing Plaintiff in disciplinary segregation would have amounted to cruel and unusual punishment.  Yet Defendants Best and George acted in a manner that ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to their respective duties and obligations to Plaintiff.

71.    Specifically, Defendant Knauer, after reviewing the Adjustment Committee's Final Summary Report regarding the October 5, 2015 incident, knew or should have known that in view of the meager record before her, disciplinary segregation would amount to cruel and unusual punishment.  Yet Defendant Knauer acted in a manner that ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to her duties and obligations to Plaintiff.

- 16 -

72.     Specifically, Defendant Prentiss knew or should have known that using excessive force to handcuff Plaintiff would result in restricting blood flow to Plaintiffs hands. Additionally, Defendant Prentiss knew or should have known that placing Plaintiff in a holding cell would cause Plaintiff to be out of his normal cell when lunch trays were served, and that depriving Plaintiff of lunch and confining him to a holding cell with his handcuffed applied so as to restrict blood flow to his hand would constitute cruel and unusual punishment.  Yet Defendant Prentiss acted in a manner that ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to her duties and obligations to Plaintiff, thereby depriving Plaintiff of his Eight Amendment right to be free from cruel and unusual punishment.

73.     Specifically, Defendant Edwards, as a correctional officer with the power to control Plaintiff's movements and activities during Plaintiff's incarceration at the PCC, knew or should have known that threatening to retaliate against Plaintiff for filing a grievance would have reasonably made Plaintiff afraid to consume future meals.  Defendant Prentiss should also have known that such threats constitute cruel and unusual punishment.  Yet Defendant Edwards acted in a manner that ignored or was deliberately, wantonly, recklessly, and/or willfully indifferent to his duties and obligations to Plaintiff, thereby depriving Plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment.

## COUNT 3
### (Deprivation of Liberty without Due Process of Law)

74.     Plaintiff repeats and realleges paragraphs 1-55 above as if set forth herein.

75.     Count 3 is alleged against Defendants Best, George and Knauer.

76.     Each and every one of Defendants Best, George, and Knauer had a duty and obligation to conduct the Adjustment Committee hearing and its subsequent review in a matter consistent with the protections afforded by the Fourteenth Amendment.  But each and every one

of Defendants Best, George and Knauer acted with deliberate deliberately, maliciously, willfully, and wantonly failed to provide a fair hearing prior to sentencing Plaintiff to one year in disciplinary segregation, thereby denying Plaintiff his liberty without due process of law.

77.     Specifically, Defendants Best and George each had a duty and obligation to conduct a fair proceeding prior to finding Plaintiff guilty of assaulting a correctional officer and sentencing him to (among other penalties) one year in disciplinary segregation.  Yet despite this duty and obligation, Defendants Best and George failed to consider any evidence other than the uncorroborated statement of Defendant Suero.  In doing so, Defendants Best and George also summarily and arbitrarily denied Plaintiff the opportunity to challenge the veracity of the evidence presented against him.  Therefore, Defendants Best and George deliberately, maliciously, willfully, and wantonly failed to provide Plaintiff with due process of law before restricting his liberty, in violation of Plaintiff's Fourteenth Amendment rights.

78.     Specifically, Defendant Knauer, as a member of the Administrative Review Board, had a duty and obligation to provide Plaintiff with a fair appeal of the Adjustment Board's decision.  Yet despite this obligation, Defendant Knauer summarily and arbitrarily approved of the Adjustment Board's decision, thereby deliberately, maliciously, willfully, and wantonly failing to provide Plaintiff with due process of law before restricting his liberty, in violation of Plaintiff's Fourteenth Amendment rights

### COUNT 4
### (Conversion of Personal Property)

79.     Plaintiff repeats and realleges paragraphs 1-55 above as if set forth herein.

80.     Count 4 is brought against Defendants Suero and Markee.

81.     Defendants Suero and Markee, as the last individuals to have access to the missing personal property items taken from Plaintiff's U-gallery cell, have intentionally and

wrongly deprived Plaintiff of personal property to which he is entitled. Therefore, under Illinois Law, Defendants Suero and Markee are jointly and severally liable for the wrongful conversion of the missing personal property items taken from Plaintiff's U-gallery cell.

## **PRAYER**

Plaintiff demands the following relief:

a) To be examined and treated by a doctor at an outside facility, at the expense of the defendants;

b) For compensatory damages as determined by the trier of fact to adequately compensate Plaintiff for the deprivation of rights described in this Complaint;

c) For punitive damages as determined by the trier of fact to punish each defendant and to deter future similar conduct by that defendant;

d) For nominal, statutory and exemplary damages in the maximum amount as allowed by law;

e) For reasonable attorney fees;

f) For an award of Plaintiff's cost of suit; and

g) For any other relief that the Court deems proper.

## **PLAINTIFF RESPECTFULLY DEMANDS TRIAL BY JURY**

Dated: August 26, 2016

Respectfully Submitted,


*/s/ John M. Schafer*
Thomas G. Pasternak
John M. Schafer
Akerman LLP
71 South Wacker Drive
46th Floor
Chicago, IL 60606
Phone: (312) 870-8019
Fax: (312) 424-1900

**Attorneys for Plaintiff**